IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Kelly K.,<br><br>                    *Plaintiff*,<br><br>    v.<br><br>Frank J. Bisignano,<br>Commissioner of Social Security,<br><br>                    *Defendant*. | Case No. 3:23-cv-50440<br><br>Honorable Michael F. Iasparro |

**MEMORANDUM OPINION AND ORDER**

      Plaintiff Kelly K. brings this action under 42 U.S.C. § 405(g) seeking reversal and remand of the decision denying her application for supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

**BACKGROUND**

      Plaintiff filed an application for social security income benefits alleging a disability onset date of August 1, 2018. R. 185. Following a hearing, an administrative law judge ("ALJ") issued an unfavorable decision on March 30, 2023, finding that Plaintiff is not disabled. R. 17-28. The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations:

> lift 20 pounds occasionally and 10 frequently; stand or walk 6 hours, sit for 6; occasional ladders and hazards such as unprotected heights and dangerous moving machinery; frequent handling bilaterally; simple routine tasks; occasional interactions with the public, and frequent interaction with co-workers and supervisors.

R. 23. Plaintiff has no past relevant work, but the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 27.

      The Appeals Council denied Plaintiff's request for review on October 11, 2023, making the ALJ's decision the final decision of the Commissioner. R. 1-6; 20 C.F.R. § 416.1481. Plaintiff then filed this action seeking judicial review. Dkt. 1.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). *See* Dkt. 8.

1

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* The court's review of the Commissioner's findings is subject to "a very deferential standard." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025). When reviewing the ALJ's decision, the court's inquiry is limited to determining whether the ALJ's decision is supported by substantial evidence or resulted from an error of law. *Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek*, 587 U.S. at 103). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1054 (internal quotation marks and citation omitted). To determine whether substantial evidence exists, the court reviews the record as a whole but "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052–53; *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). Thus, "we will reverse an ALJ's decision only if the record compels a contrary result." *Thorlton*, 127 F.4th at 1081 (citation modified).

## DISCUSSION

Plaintiff challenges the Commissioner's decision on three grounds: (1) the ALJ did not provide substantial evidence for his evaluation of the medical opinions in the record; (2) the ALJ failed to account for Plaintiff's moderate limitation in concentrating, persisting or maintaining pace; and (3) the ALJ improperly evaluated Plaintiff's subjective symptoms. Dkt. 17. As explained below, the Court does not find that any of these arguments warrant a remand.

As a preliminary matter, the Court notes that Plaintiff's arguments revolve entirely around her mental impairments, but she makes no allegations of error in the ALJ's analysis of her physical impairments. Accordingly, the Court will limit its review to the ALJ's discussion of Plaintiff's mental impairments and corresponding limitations.

1) Medical Opinion Evaluation

The ALJ found the opinion of Dr. Fuqua, Plaintiff's treating psychiatrist, to be unpersuasive. R. 26. Plaintiff disagrees with this conclusion and argues that the ALJ erred by mischaracterizing Dr. Fuqua's opinion and failing to address the supportability and consistency of Dr. Fuqua's opinion in violation of 20 C.F.R. § 416.920c. Dkt. 17, at *7-13. Plaintiff also argues that the ALJ's evaluation of the state agency consultants' opinions was similarly flawed as the ALJ failed to articulate their supportability and consistency. *Id.* at *13.

When examining medical opinions, ALJs are required to articulate the persuasiveness of each opinion by considering the following factors: supportability, consistency, the source's relationship with Plaintiff; the source's specialization, and other factors as appropriate. 20 C.F.R.

2

§ 416.920c(c). While ALJs are not required to address all these factors, they must explain their consideration of the two most important factors – supportability and consistency.[2] 20 C.F.R. § 416.920c(b); *see also Cain v. Bisignano*, 148 F.4th 490, 497 (7th Cir. 2025). In short, ALJs are required "to explicitly explain why particular medical opinions are consistent [or inconsistent] with the record as a whole" and "consider the internal supportability of a physician's medical opinion." *Bakke v. Kijakazi*, 62 F.4th 1061, 1067-68 (7th Cir. 2023). This analysis of medical opinions is subject to "a very deferential standard that [the Seventh Circuit has], in fact, deemed lax." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (internal quotation marks omitted).

Here, the ALJ found Dr. Fuqua's opinion unpersuasive and provided the following explanation:

> Despite treatment history and Dr. Fuqua's relevant specialization, he assesses excessive limitations that are unsupported by and inconsistent with the evidence of record including his own treatment notes reflecting PH-Q scores of zero, positive effects from medication, less intense symptoms of depression, and outside of some problems with anxious and depressive mood intact mental status examination findings. In addition, Dr. Fuqua's explanation for assessed limitations appear largely based upon the claimant's subjective reports, rather than Dr. Fuqua's objective findings. As for Dr. Fuqua's assertion of "chronic lifelong disability," the Social Security Act and our regulations make clear that the final responsibility for deciding certain issues, such as whether a claimant is disabled under our regulations, is reserved to the Commissioner. As such, the undersigned finds Dr. Fuqua's opinion unpersuasive.

R. 26 (internal citations omitted). The ALJ explained the supportability of Dr. Fuqua's opinion when he noted that the opinion was unsupported by Dr. Fuqua's own treatment notes. R. 26 (citing R. 364-368, 595, 1048). The ALJ also noted that Dr. Fuqua's opinion was inconsistent with other evidence in the record, citing treatment notes from Plaintiff's orthopedic surgeon, endocrinologist, internal medicine physician, and mental health clinician. R. 26 (citing R. 327-29, 479, 584, 938). Because "the ALJ minimally articulated his reasons" for finding Dr. Fuqua's opinion unsupported and inconsistent, the Court "must allow that decision to stand." *Pufahl v. Bisignano*, 142 F.4th 446, 457 (7th Cir. 2025) (internal quotation marks omitted).

Plaintiff also argues that the ALJ's conclusion that Dr. Fuqua's opinion is unpersuasive was based on a mischaracterization of the opinion. Dkt. 17, at *8. The ALJ found Dr. Fuqua's opinion to be "largely based upon [Plaintiff's] subjective reports." R. 26. Plaintiff asserts that this reasoning provided by the ALJ was incorrect (because Dr. Fuqua's treatment notes included objective findings) and improper (because physicians are permitted to rely on subjective symptoms to craft their opinions). Dkt. 17, at *8. "But substantial evidence supports the ALJ's finding that the medical records—including Dr. [Fuqua's] own records—undermined the doctor's opinion." *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021). As discussed in further detail below, the ALJ

---

[2] Supportability "looks at the extent the relevant and objective medical evidence supports the medical opinion" while consistency "considers the extent to which the medical opinion is consistent with other medical evidence in the record." *Cain*, 148 F.4th at 497.

3

acknowledged that there were objective findings in Dr. Fuqua's notes but then properly exercised his discretion to discount Dr. Fuqua's opinion based on multiple, permissible factors.

While one factor the ALJ pointed to was Dr. Fuqua's reliance on Plaintiff's subjective reports, such reliance was not in error. *See, e.g., Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("An ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations."); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints."). Moreover, a physician's predominant reliance on subjective complaints may make that physician's opinion less persuasive when (as here) such complaints are inconsistent with the physician's own treatment notes or other record evidence. *See Cain*, 148 F.4th at 497-98. For example, Dr. Fuqua opined that Plaintiff would be off task more than twenty percent of the day based on Plaintiff's own reports. R. 424. While there was some evidence of concentration issues in the record, such an extreme limitation was inconsistent with Plaintiff's daily activities and repeated findings of intact mental status examinations (by Dr. Fuqua and other treaters). R. 22, 26. The ALJ did not simply dismiss Dr. Fuqua's opinion because it was based on Plaintiff's subjective reports, but rather adequately explained how Dr. Fuqua's reliance on Plaintiff's subjective complaints rendered his opinion inconsistent with his own treatment notes and the rest of the record.

Plaintiff further asserts that the ALJ's consideration of Dr. Fuqua's opinion ignored objective medical findings and observations of abnormalities in Plaintiff's affect beyond just her anxious and depressed mood. Dkt. 17, at *8-9. While Plaintiff does point to some records that were not specifically referenced by the ALJ, the ALJ was not required to "address every piece of evidence" as long as "a line of evidence supporting a finding of disability" was not ignored. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021). Throughout his opinion, the ALJ made note of Plaintiff's anxious and depressed moods while also acknowledging notes of inattentiveness, slowed and withdrawn behavior, concentration deficits, labile affect, and impulsive judgment. R. 22, 25; *see also Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("An ALJ need not rehash every detail each time he states conclusions on various subjects."). The ALJ did not ignore this line of evidence showing abnormal findings, but instead found Plaintiff's largely intact mental status examinations to be more representative of the record as a whole. *See, e.g.,* R. 22 ("[D]espite mental status examination findings noting impulsive judgment, [Plaintiff] is typically noted [to] have normal judgment, good insight, and good impulse control." (internal citations omitted)). The ALJ's analysis provided "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that Dr. Fuqua's opinion was unpersuasive, so remand is not warranted on these grounds. *Pavlicek*, 994 F.3d at 783 (internal quotation marks omitted).

Plaintiff also faults the ALJ for his failure to assess the supportability and consistency of the state agency consultants' opinions. Dkt. 17, at *13. The Commissioner did not respond to this argument, thus waiving any dispute it may have. *Nichols v. Mich. City Plant Plan. Dept.*, 755 F.3d 594, 600 (7th Cir. 2014). Even without such forfeiture, the Court agrees that the ALJ erred in his analysis of the state agency consultants' opinions. The ALJ made no explicit finding about the persuasiveness of these opinions and simply explained that the "opinions [were] supported by evidence available at [the consultants'] time of review and the hearing level evidence supports no greater limitation." R. 26. This discussion did not comply with the agency's own regulations

requiring that the ALJ explain "how persuasive [the ALJ found] all of the medical opinions and all of the prior administrative medical findings." 20 C.F.R. § 416.920c(b). This is undoubtedly an error.

However, such administrative errors are subject to harmless error review. *See McKinzey v. Astrue*, 641 F.3d 884, 891-92 (7th Cir. 2011) (finding ALJ's consideration of medical opinions to be subject to harmless error review). "[I]f the error leaves [the Court] convinced that the ALJ would reach the same result on remand, then the error is harmless and remand is not required." *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Notably, Plaintiff does not explain how she was harmed by this error and makes no allegation that remanding this case to allow the ALJ to correct this error would change the outcome.

The state agency consultant at the initial level had access to (and considered) treatment notes from Dr. Fuqua through the end of 2021 and Plaintiff's function report completed in the beginning of 2022. R. 65. The consultant at the reconsideration level received the same evidence in addition to Dr. Fuqua's opinion completed in April 2022. R. 75-76. After assessing this evidence, both consultants determined that Plaintiff should not be required to regularly work with the general public. R. 70, 81. They also found that Plaintiff struggles with maintaining concentration but the consultant at the initial level determined that Plaintiff can concentrate on multi-step tasks "with moderate effort," while the consultant at the reconsideration level determined that Plaintiff, despite this concentration limitation, can perform "simple routine tasks." *Id.* Similarly, the ALJ limited Plaintiff to "simple routine tasks; occasional interactions with the public; and frequent interaction with co-workers and supervisors." R. 23. Recognizing the similarity in these findings, it seems as though the ALJ found the state agency consultants' opinions at least somewhat persuasive despite not making that determination explicit. Without such an articulation, however, the Court "cannot rewrite the record as though the ALJ's [omission] was a typo." *Poole v. Kijakazi*, 28 F.4th 792, 797 (7th Cir. 2022).

However, the Court does not have to "invent new findings to rescue" the ALJ's evaluation here because the ALJ did not simply take the consultants' recommendations at face value. *Id.* Instead, the ALJ independently evaluated the evidence underlying the consultants' opinions (as well as more recent evidence) to assess Plaintiff's RFC. The ALJ made note of Plaintiff's "alleged inability to be around people, and problems getting along with authority figures" as described in her function report. R. 21 (citing R. 227-235). In assessing this allegation, the ALJ considered Plaintiff's reports of anxiety and examinations showing an anxious or depressed mood throughout the record but also pointed to Plaintiff's "meaningful family relationships" and ability to cooperate with providers. R. 21, 26 (citing R. 386, 595, 928, 990). The ALJ further noted that Plaintiff's symptoms are managed with medication, therapy, and coping mechanisms. R. 26. Considering all this, the ALJ found that Plaintiff has a moderate limitation in interacting with others which the ALJ accounted for in Plaintiff's RFC by limiting her to occasional interactions with the public and frequent interactions with co-workers and supervisors. R. 21, 26.

As discussed in further detail below, the ALJ also considered Plaintiff's "alleged inability [to] pay attention for prolonged periods" but, in consideration of all the evidence, determined that Plaintiff continues to have a "useful ability to focus attention, and stay on task at a sustained rate." R. 22. Accordingly, the ALJ found that nothing more than a restriction to simple routine tasks was indicated by the record to account for this limitation. R. 26. Although in line with portions of the

state agency consultants' opinions, nothing about this analysis relied on, or even referenced those opinions. Instead, the ALJ discussed the evidence on which the state agency consultants based their opinions in sufficient detail to enable the Court to "predict with great confidence" how the ALJ would address the opinions on remand. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). "It would serve no purpose to remand this case to the ALJ for a statement of the obvious." *McKinzey*, 641 F.3d at 892.

   2) Concentrating, Persisting or Maintaining Pace

Plaintiff also asserts that the ALJ violated SSR 96-8p by failing to account for Plaintiff's limitation in concentrating, persisting or maintaining pace ("CPP") in the RFC. Dkt. 17, at *13-15. Plaintiff correctly explains that "the RFC must accommodate a claimant's specific deficiencies in [CPP]." *Id.* at *13. Here, the ALJ found Plaintiff to have a moderate CPP limitation based on Plaintiff's own allegations and references in the record to Plaintiff's "inattentiveness and slowed and withdrawn behavior." R. 22. The ALJ accounted for this limitation by restricting Plaintiff to "simple routine tasks," but the ALJ did not include an off-task restriction in the RFC. R. 23. At the hearing, the VE testified that all work would be excluded for an individual who is "off task fifteen percent or more of the workday." R. 60. Therefore, an error in the ALJ's decision not to include an off-task restriction may harm Plaintiff as such a restriction could lead to a finding that Plaintiff is disabled. However, the Court finds no error in the ALJ's RFC analysis.

The Seventh Circuit "has said that generically confining claimants to 'routine tasks and limited interactions with others' might not adequately capture a claimant's limitations" in CPP. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); s*ee also Varga v. Colvin*, 794 F.3d 809, 81-15 (7th Cir. 2015) (collecting cases). This is because "someone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (internal quotation marks omitted). The Seventh Circuit has not, however, created a bright-line rule that a moderate CPP limitation necessarily requires a pace restriction be included in the RFC. *See Pavlicek*, 994 F.3d at 783 ("A moderate limitation is defined by regulation to mean that functioning in that area is fair . . . so a moderate limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." (citation modified)).

Here, the ALJ's opinion did not "rely merely on catch-all terms like 'simple, [routine] tasks.'" *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). Instead, "the ALJ reasonably found unreliable" the evidence supporting an off-task limitation. *Zoch v. Saul*, 981 F.3d 597, 603 (7th Cir. 2020). The ALJ considered the evidence but explained that Plaintiff demonstrated a "useful ability to focus attention, and stay on task at a sustained rate." R. 22. As discussed above, the ALJ also properly found Dr. Fuqua's opinion – the only opinion including an off-task restriction – to be unpersuasive. R. 26. Therefore, "substantial evidence supports the ALJ's conclusion that the restrictions in the [RFC] adequately addressed [Plaintiff's] 'moderate' limitations in [CPP]." *Pavlicek*, 994 F.3d at 784; *but cf. Crump*, 932 F.3d at 571 ("The ALJ's RFC analysis did not say enough either to accommodate or rule out what the VE's testimony and the medical record otherwise made clear—that Crump's difficulties with [CPP] pose a significant hurdle for her to stay on task at work.").

6

The typical warning that "observing that a person [who] can perform simple and [routine] tasks says nothing about whether the individual can do so on a sustained basis" certainly holds true. *Crump*, 932 F.3d at 570. However, the ALJ here provided adequate explanation about what Plaintiff *can* do on a sustained basis and that includes a "useful ability to focus attention and stay on task at a sustained rate." R. 22. That conclusion, as the ALJ explained, was based on evidence in the record that showed Plaintiff was regularly "alert, with normal thought content, and normal cognition," and that she maintained sufficient mental functioning in the area of concentration to "crochet, watch shows/movies, drive, manage her own medical care, and [help her] stepmother with activities of daily living." *Id.*

3) Subjective Symptom Analysis

Finally, Plaintiff takes issue with the ALJ's evaluation of her subjective symptoms, contending that the ALJ's conclusion "was based on a limited reading of the evidence." Dkt. 17, at *15-16. Plaintiff admits that the ALJ acknowledged her abnormal mental status findings but argues that this mere acknowledgement isn't enough without further explanation. *Id.* at *15.

The Court will "give the ALJ's credibility finding 'special deference' and will overturn it only if it is 'patently wrong.'" *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). Plaintiff points out that the ALJ made note of her zero PHQ score but failed to mention her other, non-zero scores which could indicate Plaintiff experiences symptoms consistent with depression. *See Patient Health Questionnaire-9 (PHQ-9)*, National HIV Curriculum (2025), https://www.hiv.uw.edu/page/mental-health-screening/phq-9 [https://perma.cc/J8DU-HH4C]. Even so, "the ALJ was not required to mention every piece of evidence" as long as he did "not ignore an entire line of evidence that supports a finding of disability." *Combs v. Kijakazi*, 69 F.4th 428, 435 (7th Cir. 2023) (citation modified). Here, the ALJ demonstrated an understanding of Plaintiff's struggle with depression as he noted that her "mental status examinations reflect anxious and at times depressed mood." R. 25. The ALJ simply found that routine, normal findings should be afforded more weight. R. 26. Although Plaintiff may not agree with the significance the ALJ assigned to these mixed findings, she "cannot prevail by arguing that the ALJ improperly weighed the evidence." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020).

Plaintiff also takes issue with several of the factors considered by the ALJ but, in a subjective symptom analysis, ALJs are permitted to consider a wide range of factors and "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are." *Halsell v. Astrue*, 357 Fed. App'x 717, 722 (7th Cir. 2009) (unpublished); *see also* 20 C.F.R. § 416.929(c)(3) (describing the wide range of factors to be considered when analyzing subjective symptoms). Here, the ALJ explained that the record showed "largely intact" and routinely normal mental status examinations and Plaintiff reported that her daily activities included "crochet[ing], watch[ing] shows/movies, driv[ing], manag[ing] her own medical care, and [helping her] stepmother with activities of daily living." R. 22, 25-26. The ALJ also noted that Plaintiff has no behavioral problems and her "symptoms have been managed with psychotropic medication, routine psychotherapy, and coping skills." R. 26. The Plaintiff herself testified that her psychiatric medications managed her depression and anxiety "pretty good." R. 24, 50. This evidence led the ALJ to conclude that Plaintiff's symptoms were not as limiting as alleged. R. 25. "That conclusion reflects a reasonable assessment of the medical evidence, treatment history, and her daily activities, consistent with

7

agency regulations" and the Court will not "second-guess the ALJ's well-supported findings." *Padua v. Bisignano*, 145 F.4th 784, 790 (7th Cir. 2025).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for reversal and remand is denied, and the Commissioner's motion for summary judgment is granted. The Commissioner's decision is affirmed.

Entered: November 18, 2025          By: _____
                                                                                 Michael F. Iasparro
                                                                                 United States Magistrate Judge